UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY BALES,

          Petitioner,

                                 CASE NO. 2:10-CV-13480
v.                                HONORABLE DENISE PAGE HOOD

THOMAS BELL,

          Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

## I.    Introduction

Jerry Bales ("Petitioner"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his Wayne County Circuit Court convictions on two counts of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(1)(a), for which he was sentenced to concurrent terms of 4 to 15 years imprisonment in 2005. In his pleadings, he raises claims concerning the non-disclosure of evidence, prosecutorial misconduct, the exclusion of proposed defense testimony, and the effectiveness of trial and appellate counsel. Respondent has filed an answer to the petition contending that it should be denied.

For the reasons stated herein, the Court concludes that Petitioner's claims lack merit and that the habeas petition should be denied. The Court, however, also concludes that a certificate of appealability should be granted in part.

## II.    Facts and Procedural History

Petitioner's convictions arise from the sexual assault of his niece, Whitney G.[1] ("victim"), at his home in Southgate, Michigan when she was seven or eight years old. Petitioner and his wife, Linda Bales, were also the victim's godparents. The victim began visiting Petitioner's home alone when she was three or four years old, staying overnight on weekends and going on camping trips. Her siblings, a younger brother and two younger sisters, only accompanied her every few months. Over the years, Petitioner and Linda bought the victim many items, including school clothes, electronics, bicycles, and jewelry. The allegations of sexual abuse came to light in 2004 when the victim was 12 years old and Petitioner and Linda were ending their marriage. Until Petitioner and Linda began their divorce proceedings, there had never been any accusations of improper conduct. Linda admitted that she had never seen anything out of the ordinary between Petitioner and the victim.

---

[1] To protect the identity of the victim and a testifying witness who were minors at the time of the sexual assaults, the Court shall refer to them and their family members by their first names and the first initial of their last names.

After separating from Petitioner, Linda called the victim's parents and told them she was divorcing Petitioner.  Linda asked to speak with the victim's parents, outside of the children's presence.  She told them that her daughter-in-law, Jennifer Szczesniak, had made allegations of improper conduct against Petitioner and she was concerned about the victim.  Jennifer did not testify at trial and no further inquiry was made into those allegations.  Linda and the victim's parents went to a park to discuss the matter.  The victim's mother, Tamra G., testified that she and her husband argue with Linda a little because they thought it was "apples and oranges" and there was no cause for concern.  Eventually, they called the victim and had her come to the park.

When the victim arrived at the park, her mother asked her if Petitioner had ever touched her "in a way that an uncle shouldn't have."  The victim started crying and said that Petitioner had done something to her, but made no specific allegations.  Because the victim did not want to speak in front of her father, she and her mother took a walk.  On the walk, the victim told her mother what had happened between her and Petitioner.  The victim was eventually taken to the police and made specific allegations which formed the basis of the charges against Petitioner – two counts of second-degree criminal sexual conduct and one count of assault with intent to commit second-degree criminal sexual conduct.

At trial, the victim recalled visiting Petitioner's home when she was seven or eight years old and testified that Petitioner touched her inner thighs and vagina over her clothes when they were alone in the house. Petitioner did not say anything when he touched her, but afterward he told her not to tell anyone. She was usually quiet, but sometimes she would ask him to stop. On a few occasions, he grabbed her wrist and moved her hand toward his penis, but she pulled away because she was uncomfortable. Petitioner also told inappropriate jokes and told her that she had a good body. The victim felt nervous around Petitioner when she was alone with him. She also testified that Petitioner exposed himself to her on one occasion. She admitted that this was a new allegation, but explained that her memory was improving and that she recently remembered more things that had occurred. The victim also testified that shortly after she began menstruating, Petitioner told her that he was going to have one of the victim's younger sisters start coming over instead of her. The victim was mad that she would not be able to see her aunt anymore. The victim also recalled meeting with her parents at the park and telling her mom and the authorities about the sexual abuse.

Andrea S., who was 26 years old at the time of trial, testified as an other acts witness. She became involved in the case after Linda Bales contacted her father, Bob S., several months after Petitioner was charged in the case to talk to him about Andrea and Petitioner. Andrea's father then called her, told her that Petitioner had

4

been accused of child molestation, and asked if he had done anything to her. Andrea told her father that Petitioner had sexually abused her when she was a child.  She subsequently spoke to the authorities.  At trial, Andrea explained that when she was about 12 years old, Linda and Petitioner took her on a car trip to Georgia and New Orleans.  Andrea stayed at their home in Southgate the night before the trip.  That night, Petitioner entered Andrea's room and exposed his penis.  Petitioner came back and forth to the room during the night several times, exposing his penis and touching Andrea's breasts and the rest of her body.  At one point, Petitioner was on top of Andrea and penetrated her vagina.  At certain times while they were on the trip, Petitioner touched her and made lewd comments to her.  After the trip, Petitioner stalked her at school, picked her up from school, and visited her house when her parents were not home.  Sometimes she let him in the house.  When she did, he molested her.  Other times, she would hide in the house, stay with a neighbor boy, or go to a friend's house.  The last time that Petitioner came to her house, he forced open a door and she ran outside and hid in the woods. Andrea said her grandmother found Petitioner at the house alone with her a few times, but assumed he was there to see her mother.  Andrea recalled that Petitioner and Linda visited less frequently and then stopped visiting altogether in 1994 or 1995.  She knew that Linda's brother had adopted children but she never met the victim.   On cross-examination, Andrea acknowledged inconsistencies in her

testimony and explained that the incidents had occurred long ago and she had tried to forget about them over the years.

Linda Bales testified about her relationship with Petitioner, the victim, and Andrea S. The sexual abuse came to light at the time she decided to divorce Petitioner. Linda explained that she and Petitioner had a fight one day and Petitioner chased her out of the house and threatened to kill her. She went to her son's house and told him that she was getting a divorce. His wife Jennifer told her "disturbing" information about Petitioner. Based upon that conversation, she contacted the victim's parents. They subsequently met, went to the park, spoke with the victim, and learned of her claims of sexual abuse. Linda testified that she loved the victim and that she and Petitioner spoiled her and wanted to make her happy. The victim spent weekends at their house and they took her camping. They had her siblings over occasionally, but mostly just the victim. Petitioner and the victim were often alone together on Fridays due to Linda's work schedule.

As to Andrea S., Linda testified that she and Andrea's mother were good friends for years before they lost contact. Andrea's mother also worked with Petitioner. Linda recalled taking Andrea to Georgia and New Orleans and said that Petitioner and Andrea were sometimes alone together. She and Petitioner also bought Andrea things and Petitioner bought her jewelry. After Petitioner was charged, Linda contacted Andrea's father to discuss the situation. Linda also

spoke to Andrea's mother who was upset about what Andrea reported.   Linda admitted that she did not observe any improper conduct between Petitioner and the victim or Andrea.

Petitioner's sister, Jane Duvall, testified that the victim acted happy around Petitioner and was "all over him" when they did things together.   She thought that the victim was a good kid who would not harm anyone.   Jane learned that Andrea S. went with Petitioner and Linda down south to see his son and claimed that Petitioner was not happy about having to take Andrea S. with them.   Jane also testified that she was present when Linda was removing some of her belongings from Petitioner's home during their break-up.   During that visit, Linda told her that Petitioner was being investigated and was going to jail and she would get everything anyway.   Linda denied making such a comment.

Petitioner testified in his own defense at trial.   He denied touching the victim inappropriately.   He was scared, upset, depressed, and angry when he learned of the allegations.   Petitioner said that the victim used to "hang all over" him and enjoyed spending time with him.   He acknowledged that they spent a fair amount of time alone together.   He claimed that the victim was mad at him because he disciplined her the last time she visited his house.   Petitioner explained that the victim went into the pool against his instructions and dropped her wet towels on his new carpeting.   The victim and her mother admitted that the victim and

7

Petitioner had a disagreement, but claimed it was about something else.  Petitioner also denied touching Andrea S. inappropriately.  He recalled taking the trip down south with Linda and Andrea for his son's military graduation and testified that he spent a lot of time with his son.  Petitioner did not recall being alone with Andrea or going to her house alone.

Defense counsel twice moved for a mistrial alleging prosecutorial misconduct, but the trial court denied both requests.  The first motion came after the prosecution had rested.  Defense counsel asked that the prosecutor be disciplined for calling him unethical in front of the jury.  The trial court denied the motion, and admonished both the prosecutor and defense counsel for "comments on what the witness said, rather than asking them particular questions."  The judge reminded both attorneys to address the court, not each other, if they had a legal objection.  The second motion came after closing arguments.  Defense counsel cited the prosecutor's attacks on defense counsel and Petitioner's character, as well as objections designed to inflame the jury.  The judge denied the motion, finding that the jury instruction that the attorneys' comments are not evidence would be sufficient to prevent any prejudice.

At the close of trial, the jury found Petitioner guilty of two counts of second-degree criminal sexual conduct, but not guilty of assault with intent to commit

second-degree criminal sexual conduct.  The trial court subsequently sentenced Petitioner to concurrent terms of four to 15 years imprisonment.[2]

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, as well as a motion to remand.  He raised the following claims:

I.    He was denied his rights to a fair trial due to the pervasive misconduct of the prosecutor.

II.    The trial court's refusal to grant an extra peremptory challenge to exclude a juror who had a close friend who was raped denied him the right to a fair and impartial jury.

III.    The trial court erred in admitting character and propensity evidence.

IV.    The trial court erred in allowing a rebuttal witness to testify that Petitioner told dirty jokes in front of children as the testimony exceeded the scope of proper rebuttal.

V.    The trial court denied him the right to present a defense by excluding relevant defense evidence.

VI.    The cumulative effect of the errors at trial denied him a fair trial.

VII.    The trial court violated his jury trial rights by increasing his sentence based upon factors not found by a jury and one factor on which the jury acquitted him and violated his due process rights by relying upon inaccurate information at sentencing.

---

[2]  Petitioner was paroled on September 8, 2010 and discharged from state custody on September 8, 2012.

The Michigan Court of Appeals denied the motion to remand, denied relief on the claims, and affirmed Petitioner's convictions and sentence. *People v. Bales,* No. 267756, 2007 WL 1203536 (Mich. Ct. App. Apr. 24, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Bales,* 480 Mich. 928, 740 N.W.2d 302 (2007).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising the following claims in his original and amended motion:

I.    The prosecutor violated his constitutional rights by failing to disclose police reports and witness statements.

II.   Newly-discovered evidence shows that he did not receive a fair trial.

III.  Trial counsel was ineffective for failing to object to certain instances of prosecutorial misconduct.

IV.   Appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal.

The trial court denied relief and denied reconsideration.  Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals, as well as a motion to remand.  The Michigan Court of Appeals denied the motion and denied leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bales*, No. 292320 (Mich. Ct. App. Sept. 23, 2009) (unpublished).  Petitioner filed an application for leave to

appeal with the Michigan Supreme Court, which was similarly denied. *People v. Bales,* 486 Mich. 1039, 783 N.W.2d 121 (2010).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.    The prosecution failed to disclose important police reports and witness statements that showed key prosecution witnesses were lying at trial.

II.   He was denied his right to a fair trial due to the pervasive misconduct of the prosecutor.

III.  The trial court denied him the right to present a defense by excluding relevant defense evidence.

IV.   Trial counsel was ineffective for failing to object to each instance of prosecutorial misconduct, and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal.

Respondent has filed an answer to the petition contending that it should be denied because the claims are barred by procedural default and/or lack of merit. Petitioner has filed a reply to that answer.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, provides the standard of review for federal habeas cases brought by state prisoners. The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's

12

decision must have been more than incorrect or erroneous.   The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.   The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 772(2010) (quoting *Lindh*, 521 U.S. at 333, n.7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).   Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.   *Id.*   Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases — indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See*

14

*Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## VI.  Analysis

### A.    Procedural Default

As an initial matter, Respondent contends that some of Petitioner's claims are barred by procedural default. It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The United States Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In

this case, the procedural issues are intertwined with the merits of Petitioner's issues and the substantive issues are easier to resolve. Accordingly, the Court shall proceed to the merits of Petitioner's claims.

### B. Merits

#### 1. Non-Disclosure of Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecutor failed to disclose evidence. Specifically, he claims that the prosecutor failed to disclose: (1) a nine-page Huron Township police report dated 2/9/05 with supplements through 3/1/05 concerning Andrea S.'s report that Petitioner sexually assaulted her when she was a child from 1987 to 1991, (2) handwritten notes about those assaults which were taken by Andrea S.'s therapist and given to the police by Andrea S., and (3) handwritten notes from an interview with Jennifer Szczesniak, who was Linda Bales' daughter-in-law.

To the extent that Petitioner alleges a violation of the trial court's discovery order or state discovery rules, he is not entitled to federal habeas relief. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Trial court errors in the application of state procedure or evidentiary law are not cognizable as grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, any claim that the prosecution violated the trial court's

16

discovery order does not provide a basis for federal habeas relief and must be denied. *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).

Petitioner also asserts a violation of his federal constitutional rights. It is well-settled that there is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). The United States Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985).

Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose

17

impeachment evidence.  *Bagley*, 473 U.S. at 682*; Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Mullins v. United States*, 22 F.3d 1365, 1370-71 (6th Cir. 1994).  A *Brady* violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by the prior non-disclosure.  *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986).  In order to establish a *Brady* violation, a petitioner must show that:  (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of guilt.  *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010).  The petitioner bears the burden of establishing a *Brady* violation. *Carter*, 218 F.3d at 601.

Petitioner first raised this issue on collateral review in the state courts.  The trial court initially denied relief finding that Petitioner had not established that he did not have the documents at the time of his first or second trials and had not shown that he could not have obtained the documents with due diligence.  *Bales*,

No. 05-000880-01-FC (Wayne Co. Cir. Ct. Feb. 5, 2009).  On reconsideration, the trial court further found that Petitioner had not established that the documents, which primarily concerned the impeachment of an other acts witness, were sufficiently material or would have affected the outcome at trial.  *Bales*, No. 05-000880-01 (Wayne Co. Cir. Ct. May 11, 2009).  The Michigan appellate courts both denied leave to appeal for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  As to the Huron Township police report and therapist notes, those documents merely provided additional impeachment material for other acts witness, Andrea S., regarding her relationship with Petitioner when she was a child.  They did not concern the charged offenses nor directly affect the victim's credibility.  "In general, impeachment evidence has been found to be material where the witness at issue 'supplied the only evidence linking the defendant[ ] to the crime' . . . or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case."  *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (internal quotations and citations omitted).  Such was not the case here.  The jury could have discounted Andrea's testimony altogether and still found Petitioner guilty of the charged offenses against the victim.  Moreover,

Andrea S. was subject to extensive cross-examination by defense counsel and was impeached with inconsistencies in her testimony and with other evidence. Consequently, the undisclosed information would have provided an additional means of impeaching her testimony, not the only means. "Where the undisclosed impeachment evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material" under *Brady*. *Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000) (quoting *United States v. Avellino*, 136 F.3d 249, 257 (2d Cir. 1998)); *see also Jalowiec v. Bradshaw*, 657 F.3d 293, 313 (6th Cir. 2011) (quoting same language and citing *Robinson*, 592 F.3d at 736); *Montgomery v. Bobby*, 654 F.3d 668, 681-82 & n.6 (6th Cir. 2011). Lastly, the undisclosed police report and notes had low impeachment value in that the potential inconsistencies concerned details of the other acts testimony such as whether Petitioner had access to a key to Andrea's house and the name of the hotel where they stayed in Louisiana. Similarly, while the police report indicated that a former neighbor did not recall Andrea telling her about the abuse at the time it occurred, the report also indicated that another woman confirmed that Andrea had previously told her that a male friend of the family had abused her.

In sum, while the undisclosed police report and notes could have been used to impeach Andrea S.'s credibility, there is no reasonable probability that the result of the proceeding would have been different had they been disclosed at the time of trial. In other words, the documents do not "put the whole case in a such a different light as to undermine confidence in the verdict." *Cone v. Bell*, 556 U.S. 449, 470 (2009).

As to the notes regarding Jennifer Szczesniak, Petitioner has failed to show that the underlying information — that Linda Bales was aware of Jennifer's claims about Petitioner's inappropriate behavior toward her prior to 2004 — was unavailable to the defense. The notes themselves indicate that Petitioner was informed of the allegations involving Jennifer and spoke to her boyfriend/husband, Linda's son Jeff, about those allegations in 1997. The prosecution is not required to turn over information that is already available to the defense. *See Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007) ("Where, like here, 'the factual basis' for a claim is 'reasonably available to' the petitioner or his counsel from another source, the government is under no duty to supply that information to the defense."); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (finding no *Brady* violation where information is available to the defense "because in such cases there is really nothing for the government to disclose").

The notes are also not particularly favorable or material to the defense given that Jennifer did not testify at trial, the notes did not concern the charged offenses, and the notes would have, at best, provided impeachment material as to what inspired Linda Bales to speak to the victim's parents and the timing of her actions. Defense counsel, however, cross-examined Linda about such matters, called her motives into question, and impeached her testimony in other ways. The notes thus provided cumulative impeachment material. Moreover, the notes could have been detrimental to the defense because they indicate that Petitioner acted inappropriately toward the young girlfriend of his wife's son and provide details of that behavior which were not otherwise disclosed to the jury. Again, there is no reasonable probability that the result of the proceeding would have been different had the notes been disclosed at the time of trial. Petitioner has failed to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

### 2.    Prosecutorial Misconduct Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor committed misconduct by denigrating Petitioner and defense counsel during trial. Petitioner cites several examples in support of this claim. *See* Pet., p. 13-19.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v.*

*United States*, 295 U.S. 78, 88 (1935). It is inappropriate for a prosecutor to make personal or inflammatory attacks on a defendant or defense counsel. *See, e.g., United States v. Young*, 470 U.S. 1, 9 (1985); *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008); *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *see also Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

In this case, the Michigan Court of Appeals considered Petitioner's prosecutorial misconduct arguments and denied relief. The court explained:

### A.

> Defendant first claims that the prosecutor improperly expressed her personal opinion concerning defendant's veracity and denigrated defendant in the presence of the jury. Defendant complains that the prosecutor's cross-examination of defendant and closing argument were saturated with improper questions and comments. We find no error requiring reversal. "[A] witness is subject to cross-examination concerning any issue in a case, including credibility." *People v. Reid*, 233 Mich. App. 457, 477; 592 N.W.2d 767 (1999), citing MRE 611(b). Moreover, in evaluating issues of prosecutorial misconduct, this Court must examine the prosecutor's remarks in context, on a case-by-case basis. *People v. Bahoda*, 448 Mich. 261, 266-67; 531 N.W.2d 659

(1995); *People v. Thomas*, 260 Mich. App. 450, 454; 678 N.W.2d 631 (2004).   Considered in context, the prosecutor's questions ("[s]o what is your testimony today at 10:01 about that," "[d]o you want to stick with the answer absolutely not by yourself," and "[w]hich answer would you like us to hold you to?") addressed defendant's inconsistent testimony and were not improper.

Defendant complains that other comments and questions by the prosecutor, such as those regarding defendant's hearing loss, whether defendant was crying at trial, and whether defendant could see up the prosecutor's dress were improper attacks on defendant's character. Although "[i]t is not proper for the prosecutor to comment on the defendant's character when his character is not in issue," *People v. Quinn*, 194 Mich. App. 250, 253; 486 N.W.2d 139 (1992), here, the prosecutor did not commit misconduct by improperly attacking defendant's character.   Regarding defendant's alleged hearing loss, the prosecutor's inquiries addressed defendant's assertion that he had not heard the majority of questions in his first trial.   The prosecutor's comments regarding whether defendant could see up her dress were made in response to defendant's nonresponsive answers of how he was able to see that the victim was not wearing underwear, and were merely a crass attempt to elicit an answer from defendant.

Defendant failed to assert a timely and specific objection to these comments.

Defendant claims that the prosecutor's references during closing argument to defendant as "a child molester," "a control freak," "a predator," and "a boogey man," as well as her descriptions of defendant's conduct as "revolting" and "atrocious," and her references to defendant telling dirty jokes, were improper. We note that defendant's objection to some of these references was sustained by the trial court, *e.g.,* "control freak" and "boogey man."

With regard to the other references, there was evidence that defendant repeatedly molested two young girls, sometimes in the middle of the night, was "[v]ery controlling" regarding his wife's relationship with her family, and told dirty jokes in front of children. Therefore, the evidence supported the prosecutor's comments, which, although harsh, did not constitute misconduct requiring reversal. "[P]rosecutors may use 'hard language' when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms." *People v. Ullah*, 216 Mich. App. 669, 678; 550 N.W.2d 568 (1996).

Defendant also notes that the prosecutor improperly called him "a liar" during closing argument. "A prosecuting attorney has the right to comment upon the testimony in a case, to argue upon the facts and evidence that a witness is not worthy of belief and to contend that a defendant is lying." *People v. Jansson*, 116 Mich. App. 674, 693; 323 N.W.2d 508 (1982); *see also People v. Howard*, 226 Mich. App. 528, 548; 575 N.W.2d 16 (1997). In this case, the prosecutor's conduct was not so egregious that defendant was denied a fair trial.

Defendant failed to assert a timely and specific objection to this comment.

Contrary to defendant arguments, all of the prosecutor's comments were not improper, and were not mere attempts to denigrate defendant. Nor did the prosecutor improperly use defendant's character to argue that defendant had a propensity to commit some bad act. *See* MRE 404(b). Although some of the challenged comments and questioning were arguably irrelevant, we find no error requiring reversal.

## B.

Defendant next argues that the prosecutor repeatedly denigrated defense counsel. It is improper for a

prosecutor to suggest that defense counsel is intentionally trying to mislead the jury, to personally attack or denigrate defense counsel, or to question defense counsel's veracity. *People v. Watson*, 245 Mich. App. 572, 592; 629 N.W.2d 411 (2001); *People v. Kennebrew*, 220 Mich. App. 601, 607-08; 560 N.W.2d 354 (1996); *People v. Dalessandro*, 165 Mich. App. 569, 580; 419 N.W.2d 609 (1988). However, a prosecutor is entitled to point out deficiencies in defense counsel's arguments in light of the evidence presented. *Howard,* 226 Mich. App. at 544-45. Moreover, under the invited response doctrine, a prosecutor's comment that might otherwise require reversal may not require reversal if the comment was made in response to a defendant's conduct that invited the response. *People v. Jones*, 468 Mich. 345, 352-53; 662 N.W.2d 376 (2003). Whether the comment requires reversal depends upon the nature of the initiating conduct and the proportionality of the response. *Id*. at 353.

At the outset, we note that although both attorneys' conduct at trial was contentious, defense counsel's conduct was especially so. Indeed, at one point, the court noted, "I will admonish both of you, because I do believe that — I do believe you, particularly, [defense counsel] have placed some things on the record in front of the jury that you shouldn't be saying. Comments on what the witness said, rather than asking them particular questions." The court further admonished the attorneys that they were to address the court and "not talk directly to each other or about each other." Given these circumstances, when the prosecutor's comments are viewed in their proper context, it is apparent they were generally responses to defense counsel's arguments and theories, or were invited by the contentious conduct of defense counsel himself.

Regardless, to the extent that any of prosecutor's comments were objectionable, the trial court repeatedly instructed the jurors that the attorney's arguments were

26

not evidence and that they, alone, were the judges of witness credibility.  Given that juries are presumed to follow their instructions, *People v. Graves*, 458 Mich. 476, 486; 581 N.W.2d 229 (1998), any error created by the prosecutor's comments was cured by the instructions, *People v. Ackerman*, 257 Mich. App. 434, 449; 669 N.W.2d 818 (2003).  In addition, to the extent this issue is unpreserved, defendant has failed to show that his substantial rights were affected.  Indeed, given the incriminating testimony of two different witnesses claiming that defendant sexually molested them, none of the prosecutor's comments were outcome determinative.

*Bales*, 2007 WL 1203536, at *1-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Petitioner asserts that the prosecutor improperly denigrated him and attacked his character during cross-examination.  The prosecutor's cross-examination of Petitioner about his version of events, the responsiveness of his answers, his hearing loss, his crying and demeanor at trial was done to challenge the veracity of his testimony and highlight inconsistencies in his testimony.   While the prosecutor was aggressive and confrontational at times, her questions were proper cross-examination.   A prosecutor does not commit misconduct by challenging a witness's credibility and asking relevant questions.  *Slagle v. Bagley*, 457 F.3d 501, 518 (6th Cir. 2006).  The prosecutor's elicitation of testimony about Petitioner's telling dirty jokes or visiting married women's houses was found to be relevant and proper by the trial

court.  Consequently, the prosecutor did not engage in misconduct.  "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings."  *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).  Furthermore, to the extent that some of the prosecutor's questions may have been irrelevant or argumentative, they nonetheless constituted efforts at discrediting Petitioner's testimony, not impugning his character per se.  And the trial court sustained defense counsel's objections to such matters.  Petitioner has not shown the prosecutor's conduct in this regard rendered his trial fundamentally unfair.

The prosecutor's remark about whether Petitioner could see up her dress comes closer to the line of impropriety.  When considered in the context of Petitioner's non-responsive answer to the prosecutor's questions about how Petitioner could tell that the victim was not wearing underwear, however, the remark is more understandable.  Nonetheless, even if improper, the remark was brief and not misleading — and the trial court sustained defense counsel's objection.  Given such circumstances, it cannot be said that the remark affected the overall fairness of Petitioner's trial.

Petitioner also asserts that the prosecutor denigrated him during closing arguments.  The prosecutor's references to Petitioner as a child molester, predator, dirty-joke teller, and liar and her descriptions of his conduct as revolting or

atrocious were not improper because they were based upon the evidence and reasonable inferences therefrom.  Prosecutors may argue reasonable inferences from the evidence, *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000), and argue from the facts that a defense witness, including a testifying defendant, is not worthy of belief.  *Portuondo v. Agard*, 529 U.S. 61, 69 (2000); *Cristini v. McKee*, 526 F.3d 888, 901-02 (6th Cir. 2008); *see also Hutchison v. Bell*, 303 F.3d 720, 750-51 (6th Cir. 2002) (denying habeas relief on prosecutorial misconduct claim where prosecutor described the defendant as having "evil ways" and being "an evil force"); *accord United States v. Fields*, 483 F.3d 313, 360-61 (5th Cir. 2007) (use of "colorful pejoratives" is not improper as long as the pejorative is supported by the evidence); *Gonzalez v. Carey*, 58 F. App'x 269, 270 (9th Cir. 2003) (reference to petitioner as a "thug" was a reasonable inference from evidence that petitioner abducted, beat, and stabbed the victim).

While the prosecutor's references to Petitioner as a control freak and boogeyman and her comment regarding his alleged affair were more extreme and/or irrelevant, such comments were limited in scope, not misleading as to the evidence, and did not render the trial fundamentally unfair.  *See Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) ("Calling [defendant] a 'demon' comes closer to the line — it was unnecessary and unprofessional — but it goes no further than similar comments that have not required setting aside a state

conviction."). Moreover, the trial court sustained defense counsel's objections to those remarks and the prosecutor did not argue that the jury should convict Petitioner based upon his character without regard to the evidence. Petitioner has failed to establish that the prosecutor's conduct in questioning him or discussing him during closing arguments deprived him of a fair trial.

Petitioner also asserts that the prosecutor improperly disparaged defense counsel throughout the trial. As discussed by the Michigan Court of Appeals, the record reflects that this was a highly contentious trial with both the prosecutor and defense counsel acting as aggressive advocates. Both sides objected to matters throughout the trial and were tough on opposing witnesses and each other. In fact, the trial court was required to referee and admonish both parties during the trial. Considered in this context, it cannot be said that every stray comment or heated remark made by the prosecutor was so improper as to affect the overall fairness of Petitioner's trial.

A review of the record reveals that many of the prosecutor's comments and objections challenged the defense case, were based upon state evidentiary rules, and/or were not personally derogatory toward defense counsel. It is well-established that a prosecutor may highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678,

686 (6th Cir. 2005). The prosecutor criticized the defense theory, the validity of defense counsel's methods in questioning and impeaching witnesses, and defense counsel's characterization of the evidence presented at trial. The prosecutor also argued from the facts that the defense case was not worthy of belief. While Petitioner may disagree with the prosecutor's tactics or dispute the underlying factual and legal issues, such conduct was not improper, but rather hard-charging advocacy. Additionally, several of the prosecutor's remarks were made in response to defense counsel's own conduct or comments. As such, they are less likely to rise to the level of misconduct warranting habeas relief. *See, e.g.*, *Darden*, 477 U.S. at 182 (one factor in evaluating claims of prosecutorial misconduct is whether the prosecutor's statements were "invited by or was responsive" to the defense).

That being said, a few of the prosecutor's remarks on defense counsel's conduct, such as using the term "unethical" or indicating that counsel was knowingly violating the rules, cross the line of acceptable advocacy even in such a highly-contested trial. Such remarks, however, were not so flagrant or pervasive as to affect the overall fairness of the trial. *See Young*, 470 U.S. at 11 (discussing the concept of invited response and stating that "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding"); *United States v.*

*August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (ruling on direct review of a federal conviction that the prosecutor's comment that defense counsel was trying to trick the jury did not warrant reversal and stating that such comments were "a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for truth.").  Moreover, the trial court properly handled the matter at the time of trial by sustaining proper objections, overruling improper objections, admonishing both parties to regulate their behavior, and instructing the jurors that the attorneys' arguments were not evidence and that they were to recall the facts, judge witness credibility, and decide the case based upon the evidence presented at trial.  *See, e.g.*, *Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003) (ruling that trial court's instructions defeated habeas petitioner's claim that he was denied a fair trial based upon improper prosecutorial argument).  Jurors are presumed to follow the court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").  Petitioner has failed to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.

In other words, to the extent that error occurred, it was harmless and did not impact the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)

(holding that a constitutional error implicating trial procedures is considered harmless on habeas review if it did not have a "substantial and injurious effect or influence in determining the jury's verdict"); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). More importantly, for purposes of habeas review, the Court cannot say that the Michigan Court of Appeals' ruling to that effect is unreasonable. Habeas relief is not warranted.

### 3.    Exclusion of Evidence/Right to Present a Defense Claim

Petitioner next alleges that he is entitled to habeas relief because the trial court erred in excluding certain testimony, which denied him the right to present a defense. Specifically, Petitioner claims that it was error for the trial court to deny his request to call psychologist Dr. Katherine Okla to testify about false memories, forensic interview protocol, tainted interviewing, and memory. Petitioner also asserts that his right to present a defense was violated when the trial court did not allow him to present evidence that Rick Baldwin, Linda Bales' brother, had allegedly molested his own daughters and had lived with the victim for a period of time.

As an initial matter, the Court notes that alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for

habeas relief. *Estelle*, 502 U.S. at 67-68; *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the errors render the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)). Accordingly, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Petitioner also asserts that he was denied due process and the right to present a defense. The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Holmes v. South Carolina*, 547 U.S. 319, 329-31 (2006) (state rule excluding evidence of third party guilt based solely on strength of prosecution's case violated defendant's right to present a defense); *Chambers v.*

*Mississippi*, 410 U.S. 284, 302 (1973) (exclusion of hearsay statements critical to defense which "bore persuasive assurances of trustworthiness," coupled with refusal to permit cross-examination of the declarant, violated defendant's right to due process). A defendant's right to present evidence is not unlimited, however, and may be subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury").

State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interest in the criminal trial process." *Id*. When deciding if the exclusion of evidence impairs a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. The question is whether the defendant

was afforded "a meaningful opportunity to present a complete defense." *Crane v.*

*Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S.

479, 485 (1984)); *see also Chambers*, 410 U.S. at 302.

In this case, the Michigan Court of Appeals upheld the trial court's rulings

excluding proposed testimony by Dr. Okla and testimony about Rick Baldwin.

The court explained:

> Defendant next argues that the trial court's refusal to admit testimony from his "expert" witnesses denied him his right to present a defense. We disagree. This Court reviews a trial court's decision pertaining to the admission of expert testimony for abuse of discretion. *Ackerman,* 257 Mich. App. at 442-43. "For expert testimony to be admissible, (1) the expert must be qualified, (2) the evidence must provide the fact-finder a better understanding of the evidence or assist in determining a fact in issue, and (3) the evidence must come from a recognized discipline." *People v. Matuszak*, 263 Mich. App. 42, 51; 687 N.W.2d 342 (2004); MRE 702.
>
> * * *
>
> Regarding Dr. Katherine Okla, the trial court concluded that testimony regarding false or repressed memories or a "tainted interview" inducing these memories would not aid the trier of fact and that the jury could judge the credibility of the witnesses. Further, many of the issues cited by defense counsel were not relevant in this case, there had been no evidence of a "tainted interview" in this case, and the proffered expert testimony would merely confuse the jury. We find no abuse of discretion in the trial court's ruling.
>
> It appears that the victim provided more details about her sexual interaction with defendant at this trial than she did at the first because she "remembered more things that

have happened [sic]" concerning her sexual encounters with defendant, such as defendant exposing his penis to her. However, the victim also claimed that the reason she neglected to mention certain other actions by defendant, in the first trial, was because she didn't think it would be important. Similarly, the previous victim indicated that her testimony was more detailed in this trial than it was in the first because she remembered "more things." But she also explained that her testimony was more detailed because she felt more comfortable in the courtroom because she "didn't know what to expect," and noted that she was very sick at the time she testified in the first trial.

Given the witnesses' own testimony about their memories, the expert testimony on the issue of "false memory" would arguably amount to an impermissible "opinion or assessment as to the veracity of a complaining witness in a criminal sexual conduct case." *People v. Graham*, 173 Mich. App. 473, 478; 434 N.W.2d 165 (1988). As the trial court noted, expert testimony in this regard concerning the witnesses' testimony would be improper.

Defendant also argues that the trial court denied him his right to present a defense in not allowing him to present evidence that the victim lived with an uncle believed to be a child molester. We disagree. This Court reviews this unpreserved issue for plain error affecting substantial rights. *People v. Coy*, 258 Mich. App. 1, 12; 669 N.W.2d 831 (2003).

Defendant's reliance on *Washington v. Texas*, 388 US 14; 87 S Ct 1920; 18 LEd2d 1019 (1967), is misplaced. Unlike the issues presented here, Washington held that a state may not deny a defendant his right to compulsory process where a witness is able to provide relevant testimony. *Id.* at 23. Defendant's cursory argument on this issue is insufficient to show any basis for disturbing the trial court's ruling.

*Bales*, 2007 WL 1203536, at *6-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, the exclusion of Dr. Okla's proposed testimony was reasonable and within the trial court's discretion under state evidentiary rules. *See* Mich. R. Evid. 702. Dr. Okla had not interviewed the victim or the other acts witness and she could also not testify as to their credibility. There were no allegations of "tainted interviews." Rather, Petitioner's defense at trial was that Linda Bales conspired with the witnesses to fabricate the allegations of sexual abuse in order to gain an advantage in divorce proceedings. Dr. Okla's area of expertise was not relevant to the facts of the case and her testimony was likely to confuse the jury. Moreover, Petitioner was able to challenge the testimony and credibility of the victim and the other acts witness (as well as the other prosecution witnesses) through cross-examination, to present non-expert witnesses in support of his defense, and to testify on his own behalf about the events at issue. Given such circumstances, Petitioner has not shown that the exclusion of Dr. Okla's proposed testimony deprived him of a meaningful opportunity to present a complete defense or the ability to contest the criminal charges against him.

Second, as to Rick Baldwin, the trial court excluded such potential testimony finding it to be irrelevant and an extraneous or collateral matter. The trial court's

ruling was again reasonable and within its discretion under state evidentiary rules. *See* Mich. R. Evid. 402, 403.  It also did not violate Petitioner's constitutional rights.  While evidence that tends to prove a person other than the defendant committed a crime is relevant, there must be some connection between the other alleged perpetrator and the crime, not mere speculation by the accused.  *See, e.g., DiBenedetto v. Hall*, 272 F.3d 1, 8 (1st Cir. 2001); *see also Berry v. Palmer*, No. 10-1591, 2013 WL 1188985, *6-7 (6th Cir. Mar. 22, 2013) (unpublished case denying relief on similar claim).  The proposed testimony that Rick Baldwin, Linda Bales' brother, allegedly molested his own daughters, concerned a collateral matter, was speculative, and did not establish that he (Baldwin), rather than Petitioner, committed the charged offenses.  This was not a case involving an unknown perpetrator or mistaken identity.  Rather, the victim testified that Petitioner, her uncle and godfather, sexually abused her and Petitioner denied that such acts occurred.  Testimony about Rick Baldwin and his daughters was irrelevant and speculative hearsay.  Petitioner has not shown that he was denied the right to present a defense or that the trial court's evidentiary ruling rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

### 4.    Ineffective Assistance of Counsel Claims

Lastly, Petitioner asserts that he is entitled to habeas relief because he was denied the effective assistance of trial and appellate counsel.  Petitioner claims

that trial counsel was ineffective for failing to object to each instance of prosecutorial misconduct and that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal in the state courts.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.* at 788.

Petitioner first raised these issues on collateral review in the state courts and was denied relief. The state courts' denial of relief is neither contrary to Supreme

Court precedent nor an unreasonable application thereof.[3]   Given the Michigan Court of Appeals' determination, on plain error review, that Petitioner's unpreserved prosecutorial misconduct claims lack merit, as well as this Court's determination that those claims do not warrant habeas relief, Petitioner cannot establish that trial or appellate counsel was deficient and/or that he was prejudiced by their conduct.  Consequently, he has failed to demonstrate that trial or appellate counsel was ineffective under the *Strickland* standard.   Habeas relief is not warranted.

## V.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment

---

[3] The Court notes that it would reach the same result under a *de novo* standard of review.

of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id.* at 336-37.

Having conducted the requisite review, the Court concludes that Petitioner has made a substantial showing of the denial of a constitutional right as to his first two habeas claims regarding the non-disclosure of evidence and prosecutorial misconduct, but has not made a substantial showing of the denial of a constitutional right as to his other claims. A certificate of appealability is therefore warranted in part.

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED IN PART** and **DENIED IN PART.**

Dated: October 8, 2013                         s/Denise Page Hood
                                               DENISE PAGE HOOD
                                               U.S. DISTRICT COURT JUDGE

CERTIFICATE OF SERVICE

I hereby certify that a copy of this order was served upon the attorneys of record on this date, October 8, 2013, by electronic and/or ordinary mail.


s/LaShawn R. Saulsberry
Case Manager